OPINION
Appellant, Jordan Carryout, Inc., appeals the March 30, 2001 decision and judgment entry of the Franklin County Court of Common Pleas affirming the order of the Ohio Liquor Control Commission ("commission") denying renewal of appellant's 1999-2000 liquor permits. For the following reasons, we affirm.
On October 28, 1999, the Superintendent of the Department of Liquor Control informed appellant that the department denied renewal of the liquor license because the city of Cincinnati objected to the renewal for the following reasons. First, Jordan Carryout, Inc. ("permit premises" or "establishment"), the place for which the permit was sought, was so located with respect to the neighborhood, that substantial interference with public decency, sobriety, peace and good order would result from the renewal of the permit and operation by the applicant in violation of R.C. 4303.292(A)(2)(c). Second, the applicant had operated the liquor permit business in a manner that demonstrated a disregard for the laws, regulations, or local ordinances of the state in violation of R.C.4303.292(A)(1)(b). Third, Yousef Saleh, the one hundred percent sole shareholder in Jordan Carryout, Inc., had been convicted of crimes, which relate to his fitness to operate a liquor establishment in violation of R.C. 4303.292 (A)(1)(a). Fourth, Saleh had misrepresented a material fact on the 1999-2000 renewal application pending with the Division of Liquor Control in violation of R.C. 4303.292 (A)(1)(c).
Appellant filed an appeal and the matter was heard before the commission on April 5, 2000, in which the following evidence was presented.
Jordan Carryout, Inc., is located in the Over the Rhine area of Cincinnati, Ohio.[1] C-1, C-2, and D-6 liquor permits were first issued to appellant in 1996, which provided for the purchase of liquor for off-premises consumption. The city of Cincinnati objected to the renewal of appellant's liquor license and operation of the establishment because it interfered with the peace, sobriety and good order of the community, and the permit holder exhibited a disregard for the law, regulations and local ordinances of Ohio. At the commission hearing, nine witnesses testified on behalf of the state. These witnesses included Sergeant Brett Isaac, custodian of the records for the Cincinnati Police Department, Officers Shawn Tarvin, Roger Robins, and Jeff Dunaway, local residents Jennifer Scheben and Andrew Todd Hetzer, local businessman James Moll, and Gary Garmon and Denise Schumacher, employees of Tender Mercies, Inc., an establishment that provides single room housing for mentally ill adults, which is located across the street from the permit premises.
Sergeant Isaac provided records that revealed from June 1998 through January 27, 1999, seventy-seven calls were made to the police department regarding the permit premises. Most of those calls resulted in arrests and convictions. Within the immediate area, the records further revealed reports of shots fired, people with weapons, knives, and guns, people loitering, drunk and disorderly conduct, robbery, menacing, thefts, assaults, etc.
Officers Tarvin and Robins testified to seeing numerous open container law violations and drug activity in the area. Officer Tarvin specifically testified that he personally observed substantial trash in the area that he attributed to the permit premises, disorderly crowds, vice activities, prostitution, public urination, criminal damaging and assaults. Officer Dunaway further testified, in addition to observing vice activity, trash and debris, and open container violations, he observed individuals loitering and blocking the sidewalk, and engaging in dice games.
Local resident, Scheben, testified that it was impossible for her to walk down the street without being harassed by individuals sitting in front of the permit premises. She testified that the individuals were using and dealing drugs, drinking, cussing, throwing bottles at each other, and defecating. She testified that she was certain these individuals were patrons from the permit premises because they carried liquor in brown paper bags with blue writing, which were provided by the establishment. Scheben testified that she felt threatened by the twenty-to-fifty people who congregated in front of the permit premises on a regular basis. She further testified that she saw individuals who carried weapons and waived their guns in the air.
Local resident, Todd Hetzer, testified that he felt the permit premises was responsible for the trash and health problems in the area. He testified that, because the permit holder allowed his patrons to drink on and outside the premises, this led to the problem of public urination and defecation. Hetzer also testified that the blue bags that littered the area belonged to the permit premises. Hetzer additionally testified that not only has he seen knives and guns being carried by individuals outside of the establishment, but also those individuals threatened him on numerous occasions.
Businessman, James Moll, owns a building next door to the permit premises. Moll testified that he has observed open containers, public urination, and drug use in front of the establishment or in the immediate area. Moll also testified that he has cleaned up volumes of trash, usually brown paper bags with blue lettering or white bags with black lettering that identified the establishment. Moll additionally testified that he has been threatened and attacked by patrons of the establishment.
Employees of Tender Mercies, Inc., Gary Garmon and Denise Schumacher, testified that they have observed broken bottles, public urination, open containers, loitering and volumes of trash on their property. Garmon testified that he has observed people coming out of the permit premises drinking from bottles in blue bags, or drinking from cans in small white plastic bags. Schumacher further testified that she has also seen drug activities taking place on and around the premises. Garmon and Schumacher attributed these activities to the permit premises.
On April 19, 2000, the commission issued its order affirming the order of the superintendent. On May 3, 2000, appellant appealed this order to the Franklin County Court of Common Pleas and requested a stay. On May 8, 2000, the trial court denied appellant's motion for stay. On May 17, 2000, appellant filed a motion for reconsideration. On May 31, 2000, the trial court held a hearing on the motion for reconsideration and, on June 16, 2000, granted appellant's motion to stay. On March 30, 2001, the trial court affirmed the commission's order denying renewal of appellant's 1999-2000 liquor permit. It is from this entry that appellant appeals, raising the following sole assignment of error:
 THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW.
Appellant has appealed pursuant to R.C. 119.12. R.C. 119.12 provides the following standard of review for the common pleas court:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *
In Lorain City Bd. Of Edn. V. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 260-261, the Ohio Supreme Court set forth the following standard of review for an appellate court in reviewing a judgment of the trial court which determines an administrative appeal:
 In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion "'* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster (1986), 22 Ohio St.3d 191, 193 * * *. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See Rohde v. Farmer (1970), 23 Ohio St.2d 82 * * *.
 The fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.
In Our Place, Inc. v Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571, the Ohio Supreme Court defined the evidence required by R.C. 119.12
as:
 (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Thus, this court's standard of review is limited to whether the trial court abused its discretion in finding the commission's order was supported by reliable, probative, and substantial evidence or that it was in accordance with law.
Appellant argues that while the Over the Rhine area has problems, the state has not proved that the problems are a direct result of the presence of the establishment. Appellant contends that the renewal or nonrenewal of appellant's permit will not substantially interfere with the public decency, sobriety, and good order of the neighborhood. We disagree.
"[E]nvironmental conditions alone, if extreme enough, can constitute good cause to deny renewal of a permit." Davis v. Liquor Control Comm. (June 8, 1995), Franklin App. No. 94APE12-1779, unreported, citing In re Appeal of Mendlowitz (1967), 9 Ohio App.2d 83, 88. R.C. 4303.292(A)(2) states:
 (A) The division of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:
* * *
(2) That the place for which the permit is sought:
* * *
 (c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation thereunder by the applicant.
The Ohio Supreme Court recognized in Our Place that the location of a permit premises can be the only factor considered by the Department of Liquor Control when refusing to renew a permit under R.C. 4303.292(A)(2). Our Place, at 573, fn. 4. However, the location must be such that renewal of the permit would substantially interfere with public decency, sobriety, peace or good order. Id. at 573. While the location of the establishment is an important factor under R.C. 4303.292(A)(2), the critical consideration when evaluating such location is whether liquor sales would interfere with the neighborhood life in the ways specified. Perry v. Ohio State Liquor Control Comm. (June 8, 2000), Franklin App. No. 99AP-976, unreported; Elayan Bros., Inc. v. Liquor Control Comm. (Sept. 12, 1997), Montgomery App. No. 16278, unreported; Beck v. Ohio Liquor Control Comm. (Nov. 2, 1999), Franklin App. No. 98AP-1464, unreported.
In this case, the evidence indicated that appellant's establishment is located in an area of Cincinnati that has significantly deteriorated. Testimony was offered that indicated that this establishment was the worst in the area. According to the testimony of Sergeant Isaac, 1,299 calls were made to the police department during the periods of June 1998 through January 27, 1999, for complaints in a three-block radius area were Jordan Carryout is located. Of those 1,299 calls, seventy-seven calls were specifically related to the establishment itself. Policemen, local residents, and local business owners testified as to the condition of the area on and around the establishment. The testimony offered evidence of loitering, drug dealing, drunk and disorderly conduct, robbery, menacing, assault, urination, defecation, large volumes of trash and debris, cussing, fighting, shooting, and passersby being threatened and harassed. Officer Tarvin testified he considered Jordan Carryout to be the worst liquor permit premises. (Tr. 63.) Officer Dunaway testified that Jordan Carryout has more problems than any other carryout in the area. (Tr. 91.)
Appellant argues that there is no evidence that the permit holder is responsible for these activities. Appellant contends that the problems complained of existed prior to the permit holder operating the establishment. Therefore, according to appellant, the permit holder is not responsible for a situation that he did not create. Irrespective of appellant's contentions of his noninvolvement with the illegal activities, the location itself can be a significant factor in denying renewal of the permit. Perry; Our Place; Elayan Bros.; and Beck, supra. Giving the overwhelming testimony about the illegal activities that took place in, on and around the establishment, along with the number of complaints to the police department about the establishment, the trial court did not abuse its discretion in finding that the decision of the commission to deny renewal of the liquor permit was supported by reliable, substantial, and probative evidence.
In addition to the environmental impact being a basis for denying appellant's application for renewal, appellant also had been convicted of two crimes and failed to disclose those convictions in applying for renewal of his permit. R.C. 4303.292(A)(1) states:
 (A) The division of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:
 (1) That the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owning ten per cent or more of its capital stock:
 (a) Has been convicted at any time of a crime which relates to fitness to operate a liquor establishment;
 (b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
 (c) Has misrepresented a material fact in applying to the division for a permit[.]
On June 3, 1993, Saleh was convicted of soliciting prostitution and, on May 12, 1998, he was convicted of sale of liquor to minors. On the application for renewal of permits, appellant was asked "[h]as the permit holder, any partner, member, officer, director, 10% or more stockholder or manager been convicted of any crime not previously reported by the permit holder to this division? If yes, list and explain." (Administrative hearing, department's Exhibit S.) Saleh affirmatively marked the "No" box on the application. Saleh clearly misrepresented a material fact on the application to the division. Therefore, the failure to disclose these convictions constituted a separate basis under R.C. 4303.292(A)(1)(c) for not renewing appellant's permit. Appellant's sole assignment of error is not well-taken and is overruled.
Accordingly, we conclude that the trial court did not abuse its discretion in affirming the decision of the commission not to renew appellant's permit. We find that the record fully supports the judgment of the trial court that the decision of the commission was supported be reliable, probative, and substantial evidence and was in accordance with the law.
For the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] The Over the Rhine area is significantly run down and deteriorated.